IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JERRY CRAWFORD,                      )
*also known as*                      )
Jerry Fenner, Jr.,                   )
                                     )
        Petitioner,                  )
                                     )
v.                                   )          Case No. 1:16-cv-01214-STA-jay
                                     )
GRADY PERRY,                         )
                                     )
        Respondent.                  )

_____

ORDER DIRECTING CLERK TO MODIFY RESPONDENT,
DENYING § 2254 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL *IN FORMA PAUPERIS*

_____

Petitioner Jerry Crawford, also known as Jerry Fenner, Jr., has filed a *pro se* habeas

corpus petition (the "Petition"), pursuant to 28 U.S.C. § 2254. (ECF No. 1.) For the reasons that

follow, the Petition is **DENIED**.[1]

## BACKGROUND

In 2011, a Madison County, Tennessee, grand jury charged Crawford with the aggravated

robbery of a convenience store. (ECF No. 11-1 at 6-7.) At the jury trial, store manager Jane

Long testified that in the early morning hours of November 6, 2010, the defendant entered the

store and "handed her a note which read 'My gun is pointed at you. Give me the money.'" *State

v. Crawford*, No. W2012-02729-CCA-R3CD, 2014 WL 296014, at *1 (Tenn. Crim. App. Jan.

28, 2014). Long opened the cash register, but the defendant waved his hand from inside his

_____

[1]   The Clerk is **DIRECTED** to substitute Grady Perry for Cherry Lindamood as
Respondent. *See* Fed. R. Civ. P. 25(d).

pocket. *Id.* Long believed that the defendant was pointing a gun at her as she heard metal from inside the pocket hit the cash register. *Id.* When Long handed Crawford a few dollars, he said "B****, I know you got more f****** money than this," and "B****, I'll kill you." *Id.* Because Long believed the defendant was armed, she gave him money from a second register. *Id.* The defendant then quickly left the store. *Id.* The entire episode was recorded by a security camera.

Officer Thomas Brea of the Jackson Police Department testified that he spoke with Long after the robbery and retrieved the note Crawford had handed to her. *Id. at *2.* Long later identified Crawford in a photo lineup. *Id.* "[A] forensic latent print examiner with the [police department] testified" that the one of the fingerprints on the note belonged to Crawford. *Id.* "On cross-examination, [the examiner] acknowledged that three fingerprints and one palm print on the note did not belong to the defendant, and he was unable to determine the origin of those prints." *Id.* Another law enforcement officer testified that the film from the security camera revealed that "a kelly green sedan with the word 'Celtics' printed on the passenger side doors . . . was visible in front of the store moments before the defendant entered." *Id. at *3.* The car "was owned by Dominique Mitchell, the defendant's girlfriend." *Id.*

During his pretrial detention, Crawford wrote several letters to Mitchell, in which he confessed to the robbery and urged her to "take the charge" for him. *Id. at *3.* He wrote similar letters to his friend Erika Brooks. *Id. at *4-5.*

Mitchell testified that she loaned her car to the defendant on the date of the offense. *Id.* "On cross-examination, [she] admitted that, when she initially spoke with someone from the [Jackson Police Department], she denied that the defendant had possession of her car on the

2

morning of the robbery." *Id.* She "acknowledged that she later visited the [police department] and admitted that the defendant 'had [her] car on November the 6th.'" *Id.*

Crawford testified that he and Long knew each other prior to November 6, 2010, because Long had purchased Xanax pills from him on several occasions. *Id.* at *6. He stated that Long would call his cell phone to arrange purchases. *Id.* "With respect to the events of November 6, the defendant claimed that Ms. Long contacted him at approximately 10:00 p.m. on November 5 and requested some pills 'on credit.'" *Id.* After "[t]he defendant explained that he could not comply because he had to have money to feed his children and because Ms. Long had not paid for pills that she had previously purchased on credit," Long "told the defendant that she 'got a way that [he could] get paid and get a little bit extra on top.'" *Id.* Crawford testified that Long proposed that the two of them steal money from the convenience store by pretending that Crawford was robbing the place. *Id.* Long told him that he was to put the pills "in a piece of paper" on which he should write 'This is a stickup.'" *Id.* Petitioner testified that he agreed to the plan and carried it out. *Id.* He stated that, "approximately five seconds after he left the store[,] Ms. Long called his cellular telephone to inquire whether [he] had managed to leave the parking lot next to the store." *Id.* "The defendant stated that he recognized the number because Ms. Long had called him [previously] about '20 times' and that he would 'never forget that number.'" *Id.*

Crawford admitted that he had asked Mitchell to confess to the crime, and "stated that he 'should have never [have done] that.'" *Id.* at *7. On cross-examination, he explained that he never "told any law enforcement officers about Ms. Long's involvement in the robbery [because] they never came and talked to [him]." *Id.* (last alteration in original).

3

"[T]he jury convicted the defendant as charged of aggravated robbery." *Id.* At sentencing, the court found that Crawford qualified as a career offender, and sentenced him to thirty years' incarceration, to be served consecutively to his sentence in an unrelated matter. *Id.* at *7, 10. The Tennessee Court of Criminal Appeals affirmed the conviction but remanded the case for resentencing. *Id.* at *11. The circuit court resentenced the defendant to twenty-five years, to be served consecutively to the unrelated sentence. (ECF No. 11-11 at 161.) No direct appeal from resentencing was taken.

Crawford subsequently filed a *pro se* state petition for post-conviction relief (ECF No. 11-12 at 3-9), which was amended by appointed counsel (*id.* at 19-20). Following an evidentiary hearing, the post-conviction trial court denied relief and the TCCA affirmed. *See Crawford v. State*, No. W201500882CCAR3PC, 2016 WL 7799282, at *1, 10 (Tenn. Crim. App. Mar. 31, 2016).

## DISCUSSION

In July 2016, Crawford filed his Petition, asserting prosecutorial misconduct, ineffective assistance of counsel, and a sentencing error. (ECF No. 1 at 5-10.) Respondent, Grady Perry, filed the state-court record (ECF No. 11) and his Answer (ECF No. 12) to the Petition. Crawford filed a Reply (ECF No. 14), to which Respondent filed a Sur-reply (ECF No. 17). Petitioner thereafter filed a Response to the Sur-reply. (ECF No. 19.) Respondent argues that Claims 1, 3, and 4 are procedurally defaulted, and that Claims 2, 3, and 4 are non-cognizable in this federal habeas proceeding. Crawford maintains that his claims are properly before this Court and are meritorious.

# I.    Legal Standards

## A.  Habeas Review and Procedural Default

The statutory authority for federal courts to issue habeas corpus relief for persons in state custody is provided by § 2254, as amended by the Antiterrorisim and Effective Death Penalty Act ("AEDPA").  *See* 28 U.S.C. § 2254.  Under § 2254, habeas relief is available only if the prisoner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The availability of federal habeas relief is further restricted where the petitioner's claim was "adjudicated on the merits" in the state courts.  28 U.S.C. § 2254(d).  In that circumstance, the federal court may not grant relief unless the state-court decision "'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court; or that it 'involved an unreasonable application of' such law; or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court."  *Harrington v. Richter*, 562 U.S. 86, 100 (2011) (quoting 28 U.S.C. § 2254(d)(1)-(2)) (citations omitted)).

A state court's decision is contrary to federal law when it "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law," or when "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at" an "opposite" result.  *Williams v. Taylor*, 529 U.S. 362, 405 (2000).  An unreasonable application of federal law occurs when the state court, having invoked the correct governing legal principle, "unreasonably applies the . . . [principle] to the facts of a prisoner's case."  *Id.* at 409.

For purposes of § 2254(d)(2), a state court's "factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). The Sixth Circuit construes § 2254(d)(2) in tandem with § 2254(e)(1) to require a presumption that the state court's factual determination is correct in the absence of clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)). A state court's factual findings are therefore "only unreasonable where they are 'rebutted by clear and convincing evidence and do not have support in the record.'" *Moritz v. Woods*, 692 F. App'x 249, 254 (6th Cir. 2017) (*quoting Pouncy v. Palmer*, 846 F.3d 144, 158 (6th Cir. 2017)) (internal quotation marks omitted).

Before a federal court will review the merits of a claim brought under § 2254, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). To be properly exhausted, a claim must be "fairly presented" through "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 848 (1999).

The exhaustion requirement works in tandem with the procedural-default rule, which generally bars federal habeas review of claims that were procedurally defaulted in the state courts. *Id.* at 848. A petitioner procedurally defaults his claim where he fails to properly exhaust available remedies (that is, fails to fairly present the claim through one complete round of the state's appellate review process), and he can no longer exhaust because a state procedural rule or set of rules have closed-off any "remaining state court avenue" for review of the claim on the merits. *Harris v. Booker*, 251 F. App'x 319, 322 (6th Cir. 2007). Procedural default also occurs

where the state court "actually . . . relied on [a state] procedural bar as an independent basis for its disposition of the case." *Caldwell v. Mississippi*, 472 U.S. 320, 327 (1985). To cause a procedural default, the state court's ruling must "rest[] on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991) (citing *Fox Film Corp. v. Muller*, 296 U.S. 207, 210 (1935); *Klinger v. Missouri*, 80 U.S. 257, 263 (1871)).

Only when the petitioner shows "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim[] will result in a fundamental miscarriage of justice," will he be entitled to federal court review of the merits of a claim that was procedurally defaulted. *Id.* at 750. The ineffectiveness of post-conviction counsel may be cause to excuse the default of an ineffective-assistance-of-trial-counsel claim. *Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (citing *Martinez v. Ryan*, 566 U.S. 1, 14, 16-17 (2012)). A fundamental miscarriage of justice involves "a prisoner['s] assert[ion of] a claim of actual innocence based upon new reliable evidence." *Bechtol v. Prelesnik*, 568 F. App'x 441, 448 (6th Cir. 2014) (citing *House v. Bell,* 547 U.S. 518, 536 (2006)).

### B. Ineffective Assistance of Counsel

A claim that an attorney's ineffective assistance has deprived a criminal defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, a petitioner must demonstrate two elements: (1) "that counsel's performance was deficient"; and (2) "that the deficient performance prejudiced the defense." *Id.* at 687. "The benchmark for judging any claim of

ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

To establish deficient performance, a petitioner "must show that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. A court considering a claim of ineffective assistance must apply "a strong presumption" that the attorney's representation was "within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks and citation omitted).

An attorney's "strategic choices" are "virtually unchallengeable" if based on a "thorough investigation of law and facts relevant to plausible options . . . ." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

To demonstrate prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 693) (citations omitted). Instead, "[c]ounsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Id.* (quoting *Strickland*, 466 U.S. at 687).

The deference to be accorded a state-court decision under 28 U.S.C. § 2254(d) is magnified when a federal court reviews an ineffective assistance claim:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 105.

## II.     Claim 1

In Claim 1, as it appears in the Petition, Crawford asserts that "[t]he prosecutor committed misconduct by making improper comments in his opening statement; he failed to keep his promise to the jury . . . and did not put on proof that the Petitioner committed aggravated robbery." (ECF No. 1 at 5.) In response to the State's argument that Petitioner failed to raise, and therefore procedurally defaulted, any claim in the state courts relating to the prosecutor's opening statement (*see* ECF No. 12 at 20-21), Crawford asserts for the first time in his Reply that the prosecutor engaged in misconduct during *closing* argument by (1) "directly accus[ing]" and also "insinuat[ing]" that "the Petitioner's attorney . . . encourage[ed] the Petitioner to lie" and "helped the Petitioner fabricate a lie," (2) "t[aking] out of context [P]etitioner's statement concerning the role the victim played in the offense," and (3) "insinuate[ing] that Petitioner had a gun in order to rob" (ECF No. 14 at 2.) In support, he submitted the transcript of the closing argument. (*See* ECF No. 14-1.)

The claim set forth in the Reply is wholly different from the claim presented in the Petition. The Court, therefore, finds that Claim 1, as set forth in the Petition, has been

abandoned.[2] The newly asserted Claim 1 is waived as having been presented for the first time in the Reply. *See United States v. Pineda-Parada*, No. 5:13-cv-07309-JMH-HAI, 2014 WL 7405700, at *4 (E.D. Ky. Dec. 30, 2014) ("The Sixth Circuit has consistently held that arguments were made for the first time in a reply are waived.") (citing *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010)).

But even if the newly asserted Claim 1 were not waived, it would still not be properly before the Court because it is procedurally defaulted. As Respondent points out, Petitioner did not raise the claim in the state courts, and the time for doing so has passed. *See* Tenn Code Ann. §§ 40-30-102(a), (c) (setting one-year limitations period for post-conviction relief and setting forth one-petition rule); Tenn. Code Ann. § 40-30-106(g) ("A ground for relief is waived if the petitioner . . . failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented.")

Petitioner has not, moreover, established that the procedural default should be excused. Although he alleges that the failure of this Court to address the merits of the claim would result in a fundamental miscarriage of justice (ECF No. 14 at 2), he has not pointed to any new, reliable evidence of his actual innocence.

---

[2] Even if the Court were to find that Claim 1, as originally asserted in the Petition, had not been abandoned, and that, liberally construed, it represents an unartful attempt to assert that the evidence was insufficient to convict Petitioner of aggravated robbery, the claim would be without merit. Applying the evidence-sufficiency standards set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979), the Tennessee Court of Criminal Appeals found that the extensive evidence of Petitioner's guilt was sufficient to support the conviction. *Crawford*, 2014 WL 296014, at *8. In fact, the court remarked that it could "scarcely conceive of a case in which the evidence of the defendant's crime is more sufficient." *Id.* Long's testimony, the security tape, the testimony of Crawford's ex-girlfriend, Crawford's letters to her in which he confessed to the crime, and his own inculpatory testimony at trial, render the state appellate court's evidence-sufficiency ruling patently reasonable.

10

Accordingly, Claim 1 is **DISMISSED**.

## III.    Claim 2

Petitioner asserts in Claim 2 that trial counsel was ineffective by "fail[ing] to request the cell phone records of alleged co-defendant Jane Long, the . . . clerk that worked on the night of the robbery." (ECF No. 1 at 7.) He alleges that "[t]he phone records would have supported the fact that Jane Long . . . did not call her store manager immediately after the store was robbed[,] [b]ut instead . . . called the Petitioner first, to make sure that [he] was out of the vicinity of the store before calling her manager [and] the police." (*Id.*) "This evidence," he maintains, "would prove that [he] only committed a simple theft." [3] (*Id.*) Petitioner unsuccessfully raised this argument in his state post-proceedings. *See Crawford*, 2016 WL 7799282, at *6, 10. This Court agrees with Respondent that the state appellate court's determination that counsel was not ineffective easily meets the AEDPA's standards.

At the post-conviction hearing, Crawford testified that he and Long had a relationship prior to date of the offense. (ECF No. 11-13 at 16-27.) He stated that Long owed him money for

---

[3] With regard to Claim 2 in particular, the Court has undertaken a liberal construction of Crawford's sometimes confusing presentations. Where the petition form asks for a statement of "Ground Two," Crawford states "Appellant has a right to the effective assistance of counsel in collateral proceedings which provide the first occasion to raise a claim of ineffective assistance at trial." (ECF No. 1 at 6.) In the portion of the petition form that requires "[s]upporting facts," he sets forth his allegations regarding trial counsel's failure to request Long's phone records (*see id.* at 6-7). The Court therefore liberally construes Claim 2 as alleging the ineffective assistance of trial counsel. The Petition's reference to the ineffective assistance of *post-conviction* counsel is read, together with the Reply, as presenting the argument that Petitioner is entitled to a hearing on Claim 2 due to the alleged ineffective assistance of post-conviction counsel in failing to develop the post-conviction record. The Court does not read Claim 2 as asserting a stand-alone claim of ineffective assistance of post-conviction counsel, which would be non-cognizable in this federal habeas proceeding. *See* 28 U.S.C. § 2254(i) ("The ineffectiveness . . . of [post-conviction] counsel . . . shall not be a ground for relief in a proceeding arising under section 2254."); *see also Coleman*, 501 U.S. at 752 (there is no constitutional right to post-conviction counsel).

drugs, and conspired with him to steal from the convenience store by making it look like a robbery. (*Id.*) He testified that he told this information to his trial attorney. (*Id.* at 24-25.) He insisted that counsel should have subpoenaed Long's phone records to establish that he and Long had a pre-existing relationship. (*Id.* at 16, 24-25.) On cross-examination, Petitioner admitted that he did not give his defense counsel his cell phone number prior to trial in order to facilitate an investigation of Long's phone records because, he insisted, he did know his own number. (*Id.* at 28-29.) Trial counsel testified that Crawford never provided him with his cell phone number and "[n]ever at any time did he make a request for [Long's cell phone] records." (*Id.* at 58-59.) The court credited counsel's testimony over Petitioner's, and found that counsel had not provided ineffective assistance by failing to subpoena Long's phone records. (*Id.* at 74, 76; ECF No. 11-12 at 27.)

On appeal, the Tennessee Court of Criminal Appeals reviewed the evidence adduced below, identified *Strickland*'s standards, and determined that counsel did not render ineffective assistance. *Crawford*, 2016 WL 7799282, at *9-10. The court accepted the lower court's determination that post-conviction counsel was a credible witness, but that Petitioner was not. *Id.* at *10. It also noted that, although Crawford "contended that Ms. Long's phone records would have shown they were in contact prior to the robbery and damaged her credibility at trial, he did not offer those phone records" at the post-conviction hearing. *Id.* And, in contradiction to Crawford's story that he and Long conspired to carry out a simple theft, "[t]he State provided a letter at the post-conviction hearing, written by the Petitioner, in which he confessed to robbing the convenience store." *Id.* The appellate court therefore concluded that, "[o]ther than the

Petitioner's testimony, no evidence was presented at the post-conviction hearing to support his claim that he and Ms. Long knew each other and conspired in the robbery." *Id.*

As noted, the Tennessee Court of Appeals correctly identified the ineffective-assistance-of-counsel standards set forth in *Strickland* and applied them to the facts of Petitioner's case. Thus, its determination that counsel did not render ineffective assistance is not "contrary to" controlling Supreme Court law. *See Williams*, 529 U.S. at 406 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause.").

Moreover, the appellate court's factual determinations and its application of *Strickland's* standards to those facts are not unreasonable. The post-conviction trial court credited counsel's testimony, and the appellate court reasonably refused to disturb that credibility finding. Petitioner has not identified any clear and convincing evidence to undermine the credibility determination. Based on counsel's testimony that Crawford did not provide counsel with his phone number and never asked him to investigate Long's cell phone records, together with Petitioner's admission in his letter that he committed the robbery, the state appellate court's determinations that counsel's performance was not deficient and did not prejudice Petitioner were patently reasonable.

Petitioner nevertheless insists that he is entitled to an evidentiary hearing on Claim 2. He argues in his Reply that he was unsuccessful on the claim in the state courts because his post-conviction counsel refused to call a woman named Kelisha Fenner as a witness at the post-conviction hearing. (ECF No. 14 at 3.) Fenner, he alleges, would have "rebut[ted] Jane Long's

testimony and [would have] indicate[d] [that] Jane Long gave false testimony." (*Id.*)  He asserts that he attached Fenner's affidavit to his Reply.  (*Id.*)

Habeas Rule 8 provides that a federal court must "determine whether an evidentiary hearing is warranted" in a § 2254 case.  *Rules Governing Section 2254 Cases in the United States District Courts*, Rule 8(a).  When a claim has been "adjudicated on the merits in State court proceedings," § 2254(d), the federal court's review of the claim is "limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Twenty-eight U.S.C. § 2254(e)(2) also prohibits a court from conducting an evidentiary hearing on a claim that the petitioner did not develop in state court, either through his own lack of diligence or that of his attorney, unless the claim relies on "a new rule of constitutional law ... or ... a factual predicate that could not have been previously discovered through the exercise of due diligence."  *Williams*, 529 U.S. at 429-30 (quoting 28 U.S.C. § 2254(e)(2)).

An evidentiary hearing is not warranted in the present case for several reasons.  First, and most basically, Petitioner has not shown that Fenner's testimony is relevant to Claim 2.  He did not file Fenner's affidavit with his Reply, although he says he did, and he does not describe what Fenner would say if called to testify at an evidentiary hearing.  Instead, he only generally alleges that Fenner would "rebut[]" Jane Long's testimony.  (ECF No. 14 at 3.)

Second, Claim 2 was adjudicated on the merits in the state courts.  Pursuant to *Pinholster*, this Court's review of the state appellate court's rejection of the claim is limited to the record that was before that court.

Third, § 2254(e)(2) forbids an evidentiary hearing. Petitioner does not identify a new constitutional rule, and his allegation that he told his post-conviction counsel to call Fenner as a witness at the evidentiary hearing means her testimony was previously discoverable. As to this last point, Crawford invokes *Martinez*, insisting that he should not be bound by post-conviction counsel's alleged ineffective assistance in failing to put Fenner on the stand. (ECF No. 14 at 3.) In *Henderson v. Carpenter*, 21 F. Supp. 3d 927 (W.D. Tenn. 2014), this Court rejected the contention that *Martinez*'s equitable rationale, which applies to excuse the *procedural* default of a claim, *see Martinez*, 566 U.S. at 14, should be extended to a default of *proof*. *Id.* at 933 (citing *Moore v. Mitchell*, 708 F.3d 760, 785 (6th Cir. 2013)). The Court again rejects that argument.

Accordingly, because the state appellate court's decision affirming the denial of Claim 2 is not contrary to controlling Supreme Court law, based on unreasonable factual determinations, or the result of an unreasonable application of controlling Supreme Court law, the claim is **DENIED**.

## IV.    Claim 3

Petitioner asserts that trial counsel was ineffective by "fail[ing] to object to [his] prior convictions being used by the prosecutor to initially qualify him as a career offender [because] several prior convictions [were] committed by [him] within [the same] 24-hours." (ECF No. 1 at 8.) He insists that "this qualification which was later reduced to a persistent offender, did prejudice[] him before the jury." [4] (*Id.*) Respondent argues that the claim is procedurally defaulted and that Petitioner has not established cause to excuse the default. The Court agrees.

---

[4] Petitioner's assertion that he was "prejudice[d] . . . before the jury" is confusing. The record shows that the jury was discharged after it returned its verdict, and thus played no role in re-sentencing. (*See* ECF No. 11-3 at 92.)

On direct appeal, defense counsel argued that the sentencing court erred in imposing a sentence under Tennessee's career offender provision, Tenn. Code Ann. § 40-35-108(a),[5] because "the State failed to present proof that [Crawford's] prior convictions committed on July 30, 2003 through August 1, 2003 were not committed within the same twenty-four-hour period." (ECF No. 11-8 at 16.) The statutory career offender provision provided that, with the exception of certain crimes, "convictions for multiple felonies committed within the same twenty-four-hour period constitute one (1) conviction for the purpose of determining prior convictions." Tenn. Code. Ann. § 40-35-108(b)(4). The State conceded that the sentence was erroneous, but for the different reason that the sentencing court had misapplied the definitional portion of the career offender statute. (*See* ECF No. 11-9 21-23.) The Tennessee Court of Appeals agreed with the State, finding that, "[w]ith no prior Class A, B, or C felony convictions, the defendant did not qualify as a career offender for purposes of his Class B aggravated robbery conviction." *Crawford*, 2014 WL at *11. On remand, the lower court resentenced Crawford as a "persistent offender" under Tenn. Code Ann. § 40-35-107, which resulted in a lesser sentence. (ECF No. 11-11 at 161.)

Crawford did not argue in the post-conviction proceedings that his trial counsel rendered ineffective assistance by failing to argue at resentencing that the twenty-four-hour merger rule

---

[5] "A career offender is a defendant who has received: (1) Any combination of six (6) or more Class A, B or C prior felony convictions, and the defendant's conviction offense is a Class A, B or C felony; (2) At least three (3) Class A or any combination of four (4) Class A or Class B felony convictions if the defendant's conviction offense is a Class A or B felony; or (3) At least six (6) prior felony convictions of any classification if the defendant's conviction offense is a Class D or E felony." Tenn. Code. Ann. § 40–35–108(a).

would have disqualified him as a persistent offender.  Because the time for raising the argument to the state courts has passed, the claim is procedurally defaulted.

Petitioner argues that the default should be excused under *Martinez* because his post-conviction counsel "refused to raise the issue."  (ECF No. 1 at 8.)  To secure relief under *Martinez*, Petitioner must show that the defaulted claim is "substantial."  *Martinez*, 566 U.S. at 17.  He has not done so.

The Tennessee statute provides, in pertinent part, that "[a] persistent offender is a defendant who has received . . . [a]ny combination of five (5) or more prior felony convictions within the conviction class or higher or within the next two (2) lower felony classes, where applicable."  Tenn. Code Ann. § 40-35-107(a)(1).  Like the career offender statute, the persistent offender statute contains a twenty-four-hour merger rule.  *See id.* § 40-35-107(b)(4).

Claim 3's central factual allegation is that "several [of Crawford's] prior convictions [were] committed . . . within [the same] 24-hours."  (ECF No. 14 at 5.)  Petitioner does not support that general allegation with specific facts.  For this reason alone, he has not established that the claim is substantial.  *See Wogenstahl v. Mitchell*, 668 F.3d 307, 343 (6th Cir. 2012) ("Merely conclusory allegations of ineffective assistance . . . are insufficient to state a constitutional claim" on federal habeas review); *see also generally Rules Governing Section 2254 Cases in the United States District Courts*, Rule 2(c)(2) (a petition for habeas corpus must "state the facts supporting each ground").

To the extent Petitioner means to rely on the same merger argument he presented at the *first* sentencing hearing, he fares no better.  Crawford testified at that hearing that "[a] whole lot of" his convictions occurred within the same twenty-four-hour period.  (ECF No. 11-6 at 19.)

17

When asked if he could identify the specific offenses, he answered "I'm not sure which ones in particular because there was so many." (*Id.*) Based on this testimony, and on the record of Crawford's prior offenses, the sentencing court rejected the merger argument. (*Id.* at 30.) Petitioner therefore cannot show that his attorney performed deficiently by failing to raise the same non-meritorious argument at resentencing, or that he was prejudiced by counsel's conduct.

In addition, at the time it remanded the case for resentencing, the Tennessee Court of Criminal Appeals found that "the 28-year-old defendant had 23 class D and seven Class E felony convictions." *Crawford*, 2014 WL 296014, at *10. Because Petitioner's aggravated robbery conviction is a Class B felony, his twenty-three Class D felonies fall "within the next two (2) lower felony classes." Tenn Code Ann. § 40-35-107(a) (1). As the statute provides, only five of those felonies were needed to qualify Crawford as a persistent offender. Because he has not argued that the merger rule would reduce the number of Class D felonies to below five, he has not shown a reasonable probability that, had trial counsel raised the merger issue at resentencing, the outcome would have been different.

Therefore, as the claim is not substantial, the procedural default is unexcused. Claim 3 is **DISMISSED**.

## V.    Claim 4

In Claim 4, Petitioner challenges his "twenty-five year [sentence] as a persistent offender." (ECF No. 1 at 9.) The claim is not properly before the Court for two reasons.

First, federal habeas corpus relief is available only on the ground that the state prisoner is in custody in violation of the Constitution or laws or treaties of the United States, 28 U.S.C. 2254(a), and therefore will "not lie for errors of state law." *Estelle v. McGuire,* 502 U.S. 62, 67

18

(1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). The question of whether or not the state court erred in sentencing Crawford as a persistent offender is a matter of state, not federal, law. *See* Tenn. Code Ann. § 40-35-107 (defining "persistent offender"). Claim 4 therefore is non-cognizable in this federal habeas proceeding. *See Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016) ("[E]rrors in the application of state sentencing guidelines . . . cannot independently support habeas relief.").

Second, as Respondent correctly argues, the claim is procedurally defaulted. After sentencing on remand, Petitioner did not appeal his new, shorter sentence, and the time for doing so has passed. *See* Tenn. Code Ann. § 40-30-106(g). And although Crawford argues that his post-conviction counsel's failure to raise the sentencing claim is cause to excuse the default (*see* ECF No. 1 at 9-10), the default did not occur in the post-conviction proceedings. Rather, Petitioner defaulted his challenge to the twenty-five-year sentence at the time he failed to appeal it. In any event, the ineffective assistance of post-conviction counsel may only excuse the default of an ineffective-assistance-of-trial-counsel claim. *See Abdur'Rahman v. Carpenter*, 805 F.3d 710, 714 (6th Cir. 2015)).

Claim 4 is therefore **DISMISSED**.

For all of these reasons, the Petition is **DENIED**.

## APPEAL ISSUES

A § 2254 petitioner may not proceed on appeal unless a district or circuit judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if the petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2)-(3). A substantial showing is made when the petitioner

demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to deny the Petition. Because any appeal by Petitioner does not deserve attention, the Court **DENIES** a certificate of appealability.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court **CERTIFIES**, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is therefore **DENIED**.[6]

---

[6] If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.

**IT IS SO ORDERED**.

s/ **S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: September 27, 2019.